UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
In re:

THE GREAT ATLANTIC & PACIFIC TEA          **OPINION AND ORDER**
COMPANY, INC., *et al.*,

                     Debtor.

-----------------------------------------------------------------------x
LONG ISLAND LIGHTING COMPANY, *et al.*,

                 Appellants,

     - against -                    Lead Case
                            11-CV-1338 (CS)
THE GREAT ATLANTIC & PACIFIC TEA
COMPANY, INC., *et al.*,

                 Appellees.

-----------------------------------------------------------------------x
JERSEY CENTRAL POWER & LIGHT COMPANY,
*et al.*,

                 Appellants,

     - against -                 Consolidated Action
                            11-CV-1339 (CS)
THE GREAT ATLANTIC & PACIFIC TEA
COMPANY, INC., *et al.*,

                 Appellees.

-----------------------------------------------------------------------x
POTOMAC ELECTRIC POWER COMPANY, *et al.*,

                 Appellants,

     - against -                 Consolidated Action
                            11-CV-1512 (CS)
THE GREAT ATLANTIC & PACIFIC TEA
COMPANY, INC., *et al.*,

                 Appellees.

-----------------------------------------------------------------------x

------------------------------------------------------------------------x

WASHINGTON GAS LIGHT COMPANY,

                                        Appellant,

              - against -
                                                    Consolidated Action
THE GREAT ATLANTIC & PACIFIC TEA                    11-CV-1513 (CS)
COMPANY, INC., *et al.*,

                                        Appellees.

------------------------------------------------------------------------x

<u>Appearances</u>:

Elisa M. Pugliese
Cullen and Dykman LLP
Brooklyn, New York
*Co-Counsel for Appellants Long Island Lighting Company, et al.*

Russell R. Johnson III
John M. Craig
Law Firm of Russell R. Johnson III, PLC
Manakin-Sabot, Virginia
*Co-Counsel for Appellants Long Island Lighting Company, et al.*
*Co-Counsel for Appellants Jersey Central Power & Light Company, et al.*

Thomas R. Slome
Jessica G. Berman
Meyer, Suozzi, English & Klein, P.C.
Garden City, New York
*Co-Counsel for Appellants Jersey Central Power & Light Company, et al.*

William Douglas White
McCarthy & White, PLLC
McLean, Virginia
*Counsel for Appellants Potomac Electric Power Company, et al.*
*Counsel for Appellant Washington Gas Light Company*

Andrew M. Genser
Kirkland & Ellis LLP
New York, New York
*Counsel for Appellees The Great Atlantic & Pacific Tea Company, Inc., et al.*

Seibel, J.

Before the Court are four consolidated appeals by various utility companies ("Appellants") that provided utility services to Debtors in the underlying bankruptcy action.[1] They filed their respective appeals from the Bankruptcy Court's Order Determining Adequate Assurance of Payment for Future Utility Services ("Final Order"),[2] after which this Court consolidated the appeals on May 12, 2011 under docket number 11-CV-1338, (11-CV-1338, Doc. 13).[3]

For the reasons stated herein, the Bankruptcy Court's Final Order is AFFIRMED.

## I.    BACKGROUND

The bankruptcy case of The Great Atlantic & Pacific Tea Company, Inc. and certain of its affiliates ("Appellees") commenced on December 12, 2010, when Appellees filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  (Bankr. Doc. 1.)  On the same day, Appellees filed a motion ("Utility Motion") seeking entry of an order from the Bankruptcy Court "determining adequate assurance of payment for future utility services and prohibiting utility providers from altering or discontinuing service on account of outstanding prepetition invoices and establishing procedures for determining adequate assurance of payment for future utility services" pursuant 11 U.S.C. § 366.  (*See* Bankr. Doc. 11 ¶ 19).  Appellees proposed to deposit $7.45 million, representing two weeks of utility service provided by all of Appellees' utility

---

[1] The four appeals that are now consolidated under 11-CV-1338 are *Long Island Lighting Co., et al. v. The Great Atlantic & Pacific Tea Co., Inc., et al.*, 11-CV-01338; *Jersey Central Power & Light Co., et al. v. The Great Atlantic & Pacific Tea Co., Inc., et al.*, 11-CV-01339; *Potomac Elec. Power Co., et al. v. The Great Atlantic & Pacific Tea Co., Inc.*, 11-CV-01512; and *Washington Gas Light Co. v. The Great Atlantic & Pacific Tea Co., Inc., et al.*, 11-CV-01513.

[2] "Final Order" refers to the Bankruptcy Court's Order Determining Adequate Assurance of Payment for Future Utility Services.  (Bankr. Doc. 503.)  "Bankr. Doc." refers to documents filed in the Bankruptcy Court for the Southern District of New York under docket number 10-B-24549.

[3] The same law firm filed largely identical briefs for appellants setting forth the same arguments in 11-CV-1338 and 11-CV-1339.  Likewise, another law firm took the same course in 11-CV-1512 and 11-CV-1513.  Accordingly, unless otherwise stated, for purposes of this opinion the Court will only use and cite to documents filed in the 11-CV-1339 and 11-CV-1513 actions, as they were the later-filed briefs by each firm.  Furthermore, where necessary, the Court will refer to a case by its docket number.

providers, into a segregated, interest-bearing bank account ("Adequate Assurance Account") as adequate assurance of payment of such services. (*Id.* ¶ 12.) Additionally, Appellees sought approval of certain procedures ("Adequate Assurance Procedures") governing the adequate assurance payment and requests for additional assurances. (*Id.* ¶ 14(a)–(j).)

On December 23, 2010, certain utility companies[4] filed an objection to the Utility Motion, claiming that (1) Appellees' offer of adequate assurances was not satisfactory, and that a deposit covering two months—rather than two weeks as Appellees had proposed—was suitable; (2) Appellees failed to identify who would hold the segregated bank account, how utility providers could access the money, and what would happen to the money in the account if Appellees defaulted on their post-petition financing; (3) a segregated bank account was not a recognized form of adequate assurance under Section 366(c)(1)(A); and (4) applicable tariffs and state laws govern the pre- and post-petition relationship between the Appellants and Appellees and, thus, such tariffs should govern the adequate assurance analysis. (*See generally* Bankr. Doc. 170.) On December 23, 2010, additional utility companies[5] sought to join in the objection on the same grounds. (*See* Bankr. Doc. 174.) On January 4, 2011, more utility companies[6] objected to the Utility Motion on the same grounds and added additional arguments. (*See* Bankr. Doc. 336.)[7] In response, Appellees filed an Omnibus Reply in Support of Their Utility Motion,

---

[4] The utilities included Jersey Central Power & Light Company, Toledo Edison Company, New York State Electric and Gas Corporation, PECO Energy Company, Inc., Consolidated Edison Company of New York, Inc., Orange and Rockland Utilities, Inc., The Connecticut Light and Power Company, Yankee Gas Services Company, Public Service Electric Gas Company, and Baltimore Gas and Electric Company ("1339 Appellants").
[5] These additional utility companies included Long Island Lighting Company d/b/a LIPA, Keyspan Gas East Corporation d/b/a National Grid, and The Brooklyn Union Gas Company d/b/a National Grid NY ("Pre-Consolidated 1338 Appellants").
[6] Potomac Electric Power Company, Delmarva Power, and Atlantic City Electric ("1512 Appellants") filed the January 4, 2011 objection.
[7] Washington Gas Light Company ("1513 Appellant"), which filed its appeal in 11-CV-1513, was among the utility companies that did not file an objection below.

restating why the adequate assurances and the proposed procedures were appropriate.  (*See* Bankr. Doc. 436.)

United States Bankruptcy Judge Robert Drain heard oral argument on January 10, 2011 ("Final Hearing").  In the Final Order, dated January 12, 2011, he granted the Utility Motion and directed Appellees to make a cash deposit of $7.45 million, representing two weeks of utility services, in "a newly-created, segregated, interest-bearing bank escrow account" as adequate assurance.  (Final Order ¶ 3.)[8]  The court made its decision "[i]n the light of all of the relevant facts and circumstances and based on the Court's assessment of the degree of risk of nonpayment given the Debtors' cash flow from operations, cash on hand and proceeds from the DIP Facility, the Adequate Assurance Deposit and the Cash Deposits . . . ."  (*Id.* ¶ 5.)[9]

Appellants timely filed various Notices of Appeal of the Final Order with the Bankruptcy Court, (*see* Bankr. Docs. 625, 627, 651, 743), and then filed briefs in four separate actions in this Court.[10]  On April 21, 2011, Appellees filed a Motion to Consolidate Appeals, (11-CV-1338, Doc. 10), to which the Pre-Consolidated 1338 Appellants filed an objection on May 4, 2011, (11-CV-1338, Doc. 12).  This Court granted Appellees' motion on May 12, 2011, and consolidated the four cases under 11-CV-1338.  (*See* 11-CV-1338, Doc. 13.)

Simultaneously, but before the cases were consolidated, the Pre-Consolidated 1338 Appellants and 1139 Appellants filed motions to expedite consideration of this appeal on the basis that their claims would likely evade review on mootness grounds, as has happened to similar claims in the past, if and when Appellees no longer required utility services because they

---

[8] In the Final Order, Judge Drain required that Appellees fund an agreed-upon amount equal to a two-week cash deposit to the respective utilities that objected to the Utility Motion.  (Final Order ¶ 16.)  In turn, the amount held in the Adequate Assurance Account was correspondingly reduced by such amount.  (*Id.* ¶ 3.)

[9] "DIP Facility"—"DIP" presumably standing for Debtor in Possession—refers to Debtor's facility for post-petition financing.  (*See* Bankr. Doc. 479.)

[10] 11-CV-1338 (Doc. 4) ("Pre-Consolidated 1338 Appellants' Br."); 11-CV-1339 (Doc. 6) ("1339 Appellants' Br."); 11-CV-1512 (Doc. 5) ("1512 Appellants' Br."); 11-CV-1513 (Doc. 7) ("1513 Appellant's Br.").

closed their operations, sold substantially all of their assets, or emerged from bankruptcy through a plan of reorganization.  (11-CV-1338, Doc. 11 at 4–5; 11-CV-1139, Doc. 14 at 4–5.)  This Court denied these requests on May 18, 2011 on the basis that there were no motions pending in the Bankruptcy Court that threatened mootness, rendering expedited review of the appeals unwarranted.  (*See* 11-CV-1338, Doc. 15 at 3–4.)

On June 13, 2011, the 1512 Appellants and 1513 Appellant moved to expedite consideration of their appeals, (11-CV-1338, Doc. 17), a motion the 1339 Appellants later joined on July 1, 2011, (11-CV-1338, Doc. 22).  The Appellants sought expedited review for the same reasons as had the Pre-Consolidated 1338 Appellants and 1339 Appellants, but argued that the conditions previously lacking—namely, motions pending in the Bankruptcy Court—were now present because the Bankruptcy Court had entered orders approving the sale of some of Appellees' store locations in Maryland, and by mid-July 2011 all of Appellees' Maryland stores would be sold off.  (11-CV-1338, Doc. 17 ¶ 5; 11-CV-1338, Doc. 22 ¶¶ 5, 6, 9–16.)  Because I am addressing all of Appellants' arguments on appeal in this opinion, the Motions to Expedite are moot.

## II.    DISCUSSION

### A.    <u>Standard of Review</u>

This Court has jurisdiction to hear appeals from decisions of a bankruptcy court pursuant to 28 U.S.C. § 158(a), which provides in pertinent part that "[t]he district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees . . . ; [and,] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges."  28 U.S.C. § 158(a).  A district court reviews a bankruptcy court's findings of fact for clear error and reviews its legal conclusions *de novo*.  *Overbaugh v. Household Bank, N.A. (In re*

6

*Overbaugh)*, 559 F.3d 125, 129 (2d Cir. 2009); *see* Fed. R. Bankr. P. 8013 (district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree," and "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous").

### B.      Statutory Directives of 366(c)(3)

Appellants first argue that the Bankruptcy Court failed to follow various statutory directives set forth in 11 U.S.C. § 366 in reaching its adequate assurance decision.  Namely, Appellants argue that (1) utility companies are the only parties that may make the initial request of adequate assurances and that it is then the debtor's burden to show that the demand is unreasonable and subject to modification, (1339 Appellants' Br. 14–16; 1513 Appellant's Br. 4–5); (2) the Bankruptcy Court did not apply the correct burden of proof in determining what constituted adequate assurance, (1339 Appellants' Br. 16–17; 1513 Appellant's Br. 4–5); (3) the Bankruptcy Court failed to adhere to state law tariff procedures regarding cash deposits in determining the proper amount of adequate assurance payment, (1339 Appellants' Br. 16–17; 1513 Appellant's Br. 6); and (4) Section 366(c)(1)(A) does not provide for the type of account in which the adequate assurance payments funds were ordered to be held, (1512 Appellants' Br. 6–7; 1513 Appellant's Br. 5–6).  The Court addresses each of these challenges in turn below.

### 1.      Legal Standard Under Section 366

The parties have highlighted the split of authority on the meaning of Section 366(c) after its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Section 366 limits a utility company's authority to "alter, refuse, or discontinue service to, or discriminate against" a debtor that has filed for bankruptcy, except as permitted by subsections (b) and (c) of the statute.  11 U.S.C. § 366(a).  The statute provides, in relevant part:

(2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30–day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

(3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

(B) In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider—

(i) the absence of security before the date of the filing of the petition;

(ii) the payment by the debtor of charges for utility service in a timely manner before the date of the filing of the petition; or

(iii) the availability of an administrative expense priority.

11 U.S.C. § 366(c)(2)–(3)(B)(iii).

One interpretation of Section 366(c), set forth by Appellants, (*see* 1339 Appellants' Br. 14–15; 1513 Appellant's Br. 4), is that a Chapter 11 debtor seeking protection from the Bankruptcy Code against loss of utility service is obligated in the first instance to provide the assurance of payment in the amount and form demanded by the utility provider.  In the event that the debtor seeks to modify the amount, it may seek relief from the bankruptcy court, but only after providing the demanded amount to the utility provider.  *See In re Lucre, Inc.*, 333 B.R. 151, 154 (Bankr. W.D. Mich. 2005) (debtor has no recourse to request court order modifying assurance of payment demanded by utility until debtor first pays what utility demands); *see also In re Crystal Cathedral Ministries*, 454 B.R. 124, 128–29 (C.D. Cal. 2011) (discussing this interpretation of Section 366(c)).[11]  The other interpretation, set forth by Appellees, (*see* 1339

---

[11] The 1339 Appellants also cite *In re Viking Offshore (USA) Inc.*, No. 08-CV-31219, 2008 WL 782449 (Bankr. S.D. Tex. Mar. 20, 2008), but the court there expressly declined to "reach the question of whether, if Debtors had proposed adequate assurance in one of the forms identified in Section 366(c)(1)(A) from the inception of the case,

Appellees' Br. 9–12; 1513 Appellees' Br. 11–14),[12] provides a debtor 30 days after petitioning to either (1) under Section 366(c)(2), reach an agreement with its utility provider as to adequate assurance of payment; or (2) under Section 366(c)(3), obtain a court order determining what qualifies as adequate assurance of payment. *See Bedford Town Condo. v. Wash. Suburban Sanitary Comm'n (In re Bedford Town Condo.)*, 427 B.R. 380, 383 (Bankr. D. Md. 2010) ("[N]either § 366(c)(2) nor (3)(A) require a debtor to pay the adequate assurance demanded by a utility before the Court can modify that amount."); *see also In re Crystal Cathedral Ministries*, 454 B.R. at 129–30 (collecting cases).

Appellees have noted that "a number of courts" have rejected the first interpretation "as contrary to the clear language of the statute and underlying policy of section 366." (1339 Appellees' Br. 10; 1513 Appellees' Br. 10–11.)  I join those courts.  Section 366(c) does not intimate that only the utility provider in the first instance is afforded the opportunity to set the form and amount of adequate assurance.  The statute also does not contemplate that Section 366(c)(3)(A) comes into play only after the utility provider has made a demand for assurances, the debtor has met such demand, and the debtor files a motion for modification.  Rather, the plain reading of the statute is that a utility provider has the right to receive adequate assurance of payment that it deems satisfactory within 30 days of the filing of a bankruptcy petition.  If the parties disagree about what should constitute adequate assurance, a "party in interest"—either the debtor or utility provider—may request that the court modify the amount that the utility provider deems to be satisfactory.  Reading the statute in this manner comes closer to what other courts have held "best balances the protections afforded debtors and utility providers by

_____

the court could immediately modify the amount necessary to provide adequate assurance as of the inception of the case pursuant to Section 366(c)(3)(A)."  *Id.* at *3.

[12] "1339 Appellees' Br." refers to Appellees' Brief filed in 11-CV-1139, (Doc. 8).  "1513 Appellees' Br." refers to Appellees' Brief filed in 11-CV-1513, (Doc. 8).

provid[ing] substantial protection to a utility while at the same time providing an avenue of relief

for debtors, who believe a utility's request is unreasonable or unworkable."  *In re Crystal*

*Cathedral Ministries*, 454 B.R. at 130 (alteration in original) (internal quotation marks omitted).

As Judge Drain found below, (Final Hr'g Tr. 157:22–158:4),[13] and other courts have

stated before, the interpretation that Appellants seek is "unworkable . . . [and] could lead to

absurd results," *In re Circuit City Stores, Inc.*, No. 08-35653, 2009 WL 484553, at *3 (Bankr.

E.D. Va. Jan. 14, 2009); *see Bedford Town Condo.*, 427 B.R. at 385 ("[A] number of courts have

rejected the ruling in *Lucre*, concluding that its view of the statutory language would lead to

absurd results. . . . The Court respectfully declines to follow *Lucre*."); *In re Beach House Prop.,*

*LLC*, No. 08-11761, 2008 WL 961498, at *1 (Bankr. S.D. Fla. Apr. 8, 2008) ("An interpretation

of § 366 that precludes court intervention unless a debtor posts whatever amount is demanded

could lead to absurd results and cannot be what Congress intended.  Instead, the Court finds that

it has the authority to determine the form and amount of adequate assurance if the parties cannot

reach [an] agreement . . . .").  It would either potentially place a debtor in a position where it

would lose the Section 366 protections based on a utility provider's action or inaction, or it

would hamstring the authority of courts to set the amount of adequate assurance in the event that

the parties could not reach an agreement on the matter.  Accordingly, the Bankruptcy Court did

not err in its reading of Section 366(c).

## 2.      Burden of Proof Under Section 366

Appellants also claim that by interpreting Section 366 in the manner in which it did, the

Bankruptcy Court did not apply the correct burden of proof because, according to Appellants, the

debtor must come forward with evidence to show why a modification should be made to the

---

[13] "Final Hr'g Tr." refers to the transcript of the Final Hearing held by Judge Drain on January 10, 2011.  (11-CV-1512, Doc. 2, Ex. A.)

adequate assurance payment a utility provider deems satisfactory.  (1339 Appellants' Br. 15–17; 1513 Appellants' Br. 4–5.)  Appellants are correct that the debtor has the burden of proof on the issue of adequate assurance of payment.  *See In re Stagecoach Enters., Inc.*, 1 B.R. 732, 734 (Bankr. M.D. Fla. 1979); 17-CM27 *Collier on Bankruptcy* § 27.01[2] (16th ed. 2011).  In this case, however, Appellees did come forward in their Utility Motion, (*see* Utility Motion ¶¶ 24– 25, 28–29), and at the Final Hearing, (*see* Final Hr'g Tr. 130:15–132:24), with reasons why a deposit equal to two weeks of utility service was adequate.  They set forth facts specifically affecting their case, (*see* Utility Motion ¶ 25), and cited to courts within this district that had "regularly approved similar adequate assurance deposits and procedures in other chapter 11 cases filed after BAPCPA became effective," (*id.* ¶ 29).  The Bankruptcy Court did not reverse the burden, but rather received from Appellees facts and arguments in the Utility Motion and at the Final Hearing that were sufficient to carry the burden.  Accordingly, there was no legal error or clear factual error below.

### 3.    Two-Week Cash Deposit in Escrow as Adequate Assurance

#### i.   Amount of Payment

Next, Appellants dispute that the amount deposited into the Adequate Assurance Account was sufficient, and argue that a deposit covering two months, rather than two weeks, was proper. Appellants provide two arguments in this regard:  first, state law tariffs set forth procedures for utility companies to obtain cash deposits and, therefore, the tariffs govern the adequate assurance analysis; and second, the Bankruptcy Court considered facts not in evidence and disregarded facts in evidence in reaching its decision.  (*See* 1339 Appellants' Br. 17–20; 1513 Appellant's Br. 5.)

As an initial matter, bankruptcy courts have historically been afforded reasonable discretion in determining what constitutes adequate assurance of payment for continuing utility services. *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 81 (Bankr. S.D.N.Y. 2002). The court must engage in a fact-driven analysis in order to balance the utility provider's need to be free from unreasonable risk of nonpayment and the debtor's scarce financial resources during bankruptcy. *Id.* at 82. Courts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full. *Id.* at 80; *see In re Crystal Cathedral Ministries*, 454 B.R. at 131; *In re Circuit City Stores*, 2009 WL 484553, at *4; *Steinebach v. Tucson Elec. Power Co. (In re Steinebach)*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004).

As to Appellants' first argument—that "public utility tariffs have specifically set forth the procedures for obtaining cash deposits, maintaining those deposits, paying interest on the deposits, providing notice to customers and accounting to customers concerning their cash deposits," and therefore govern what qualifies as adequate assurance, (1513 Appellant's Br. 6; *see* 1339 Appellants' Br. 18–19)—there is ample authority to the contrary. *See, e.g.*, *Steinebach*, 303 B.R. at 644 ("[T]he determination of what constitutes adequate assurance is a federal bankruptcy law question. While the state regulatory scheme may inform that determination, state law does not control.") (internal citation omitted); *In re Adelphia Bus. Solutions*, 280 B.R. at 80 ("[B]ankruptcy courts are not bound by local or state tariff regulations."); *Begley v. Phila. Elec. Co. (In re Begley)*, 41 B.R. 402, 406 (E.D. Pa. 1984) ("[A] state regulation prescribing a particular security deposit does not bind the bankruptcy court."), *aff'd*, 760 F.2d 46 (3d Cir. 1985). Appellants have cited no bankruptcy or district court opinion—and the Court is aware of

none—that holds otherwise.[14]  In the absence of conflicting authority, the Court finds that the

Bankruptcy Court was correct in rejecting Appellants' evidence and arguments concerning the

governing authority of such state tariffs on the amount of the cash deposit.

As to Appellants' second argument—that Judge Drain did not properly weigh the

evidence—I find this argument fails as well, especially because I am to give deference to the

Bankruptcy Court's findings of fact and set them aside only for clear error.  The Bankruptcy

Court considered several factors in coming to its conclusion that a two-week cash deposit was

sufficient.  First, the court considered Appellees' post-petition finances, including "cash flow

from operations, cash on hand and proceeds from the DIP Facility," (Final Order ¶ 5), and

recognized that Appellees had access to more credit to pay utility fees than it had had pre-

petition, (see Final Hr'g Tr. 154:17–18, 165:19–168:4).[15]  Second, the court looked at the burden

that an additional deposit would impose on Appellees as reorganizing debtors, and found that it

did not seem sensible to require Appellees to "put[] up cash that it could otherwise be using to

run its business just to sit there."  (Id. at 142:25–143:2.)  Third, the court heard evidence that the

account holding the cash deposit was created for the sole benefit of protecting utility providers,

which further reduced the risk that utility providers would provide post-petition services without

compensation.  (See id. at 136:14–16.)  Fourth, the court noted that it would change the provision

in the Adequate Assurance Procedures to allow utility providers to come back to the court to ask

---

[14] Appellants cite In re RobMac, Inc., 8 B.R. 1, 3–4 (Bankr. N.D. Ga. 1979), and In re Stagecoach Enters., 1 B.R. at
735–36, for the proposition that "courts have found that the billing exposure created by Tariffs is sufficient to justify
two month deposit requests." (1339 Appellants' Br. 19.)  Those cases hardly support the proposition that tariffs
govern what constitutes adequate assurance.  While those courts ultimately found that two-month deposits were
justified under the facts of the cases, both courts stated that the tariffs were not controlling and that they gave them
little weight.  See In re RobMac, 8 B.R. at 3–4; In re Stagecoach Enters., 1 B.R. at 735–36.
[15] Appellants argue that because Appellees did not offer the DIP Facility into evidence, the Bankruptcy Court could
not consider it in reaching its decision, but they have not cited any authority for such a proposition.  (1339
Appellants Br. 18.)  In any event, before the Bankruptcy Court at the Final Hearing was the DIP Facility that had
already been approved on an interim basis, (Bankr. Doc. 43), and general discussion and information about the DIP
Facility, cash flow, and cash on hand, (see, e.g., Final Hr'g Tr. 131:18–23, 144:23–145:2; Decl. of Frederic F. Brace
¶ 14 (Bankr. Doc. 7); DIP Facility Motion 4–5 (Bankr. Doc. 19)).  Moreover, the Bankruptcy Court approved the
DIP Facility prior to entering its Final Order on adequate assurances.  (See Bankr. Doc. 479.)

for additional assurances if they foresaw changes in the circumstances of the case.  (*See id.* at 141:4–10, 142:22–24.)  Finally, it appeared to the court that the utility providers were seeking assurances that were more than necessary; rather, as Judge Drain found below, "[t]hey want[ed] an absolute—they want[ed] the maximum that they would be out."  (*Id.* at 142:3–4).

On review of the record, and notwithstanding Appellants' evidence and arguments that a two-month deposit was more appropriate, I cannot say that the Bankruptcy Court's findings of fact were clearly erroneous.  Appellants' arguments regarding their billing cycle were reasonable, but the Bankruptcy Court had the discretion to choose among reasonable proposals. The court weighed the evidence and did not clearly err in determining that, in light of the low risk of default given the DIP Facility, the utility providers were adequately assured payment through the cash deposit.[16]

### ii.  Type of Payment Under Section 366(c)(1)(A)

Appellants also argue that the Bankruptcy Court committed reversible error by finding that "a newly-created, segregated, interest-bearing bank escrow account," (Final Order ¶ 3), qualified as an adequate assurance of payment, when such accounts are not expressly set forth as a form of payment in Section 366(c)(1)(A) and the account was held by someone other than the utility, (1512 Appellants' Br. 6–7; 1513 Appellant's Br. 5–6).[17]

As an initial matter, the Bankruptcy Court ordered cash deposits with the utility for the objecting Appellants, (*see* Final Order ¶ 16), which provided adequate assurance of payment as to them under Section 366(c).  In any event, this Court does not find error in the form of payment

---

[16] The Court also finds that just as Appellants were required to fund a two-week cash deposit into the Adequate Assurance Account by the Bankruptcy Court's directive in its Final Order, (Final Order ¶ 16 ("The Debtors shall fund")), they, too, would be required to fund additional money upon the delivery of a Carve Out Notice as defined under the DIP Order, (*id.* ¶ 17 ("the Debtors shall fund")).  The Court does not agree with Appellants that paragraphs 20–21 of the Final Order render paragraphs 17–18 "illusory," especially considering that the Bankruptcy Court directly stated at the Final Hearing that it was adding a provision to the Final Order enabling a utility to come back to court and ask for additional assurances.  (Final Hr'g Tr. 141:4–10, 142:22–24.)

[17] The 1513 Appellant did not object below and thus waived this argument.

that Judge Drain approved in this case.  Under Section 366(c), "the term 'assurance of payment' means—(i) a cash deposit; (ii) a letter of credit; (iii) a certificate of deposit; (iv) a prepayment of utility consumption; or (v) another form of security that is mutually agreed on between the utility and the debtor or trustee."  11 U.S.C. § 366(c)(1)(A).  Courts interpreting this language have found segregated, interest-bearing accounts, much like the one in this case, to be "the equivalent of a letter of credit," *In re Circuit City Stores,* 2009 WL 484553, at *4, or a "cash deposit," *In re Crystal Cathedral Ministries*, 454 B.R. at 130, and thus an "assurance of payment" under Section 366(c)(1)(A).

In fact, the *Crystal Cathedral Ministries* court recently addressed this issue,[18] and held that it could not "find that the Bankruptcy Court's determination that the segregated bank account is a 'cash deposit' runs afoul of the plain meaning of the statutory language."  454 B.R. at 130.  The district court reasoned that the statute does not define the term "cash deposit," and that the account consisted of money segregated solely for the benefit of the debtor's utilities.  *Id.* As to the adequacy of the deposit, the court rejected the argument that the account was not adequate simply because it was held by someone other than the utility provider, and the utility providers had not persuasively argued that they needed to control the money.  *Id.* at 131–32.

I find the *Crystal Cathedral Ministries* court's reasoning instructive and persuasive.  At the Final Hearing, Judge Drain heard arguments from the parties concerning whether the Adequate Assurance Account was a cash deposit within the meaning of the Bankruptcy Code.  In response to Appellants' argument that "[i]t's not a cash deposit we're holding.  It's not cash that we have," Judge Drain responded, "[i]t's in escrow.  The escrow says, you know, present the escrow, say we're drawing on it because of our bill."  (Final Hr'g Tr. 135:2–3, 135:8–10.)

---

[18] The parties did not have the benefit of the Central District of California's discussion, *see In re Crystal Cathedral Ministries*, 454 B.R. at 130–32, when they argued their motions before Judge Drain and filed their briefs in this Court on appeal.

Conversely, when Appellees' counsel suggested that the Adequate Assurance Account was akin to a letter of credit, which is expressly provided as an assurance of payment under Section 366(c)(1)(A), Judge Drain agreed, stating "effectively you're getting a letter of credit except . . . they're probably not paying a letter of credit fee." (Final Hr'g Tr. 137:13–15.)  The Bankruptcy Court reasonably found that the Adequate Assurance Account was a cash deposit or akin to a letter of credit within the meaning of the Bankruptcy Code, and that there was no persuasive reason why the utility providers, rather than an escrow agent, needed to control it.  I do not find error in the legal conclusion that the Adequate Assurance Account is an "assurance of payment" within the meaning of Section 366(c)(1)(A), nor any clear error in the factual conclusion that the utility providers were adequately assured of payment.

    **C.**    **Consideration of Absence of Pre-petition Security Held by Appellants**

Appellants cite to the Final Hearing transcript in arguing that Judge Drain, in violation of Section 366(c)(3)(B)(i), considered pre-petition security in his determination of whether the $7.45 million was adequate assurance.  (*See* 1339 Appellants' Br. 13–14; 1513 Appellant's Br. 3.)  On my reading of the transcript, however, it appears that Judge Drain referred to the lack of pre-petition security only to contrast Appellants' current situation—in which Appellees had cash from the DIP Facility to stay current on their obligations—and Appellants' pre-petition position, where Appellants did not have any security in the event that Appellees failed to pay their utility bills.  In other words, Judge Drain took into account the presence of present and future security, not the absence of past security, in evaluating the risk of non-payment.  In fact, at the Final Hearing, counsel for the 1339 Appellants reminded Judge Drain that "the statute very clearly says whether or not [Appellants] had prepetition security is no longer relevant," to which Judge Drain responded, "I know but the point is adequate assurance of future payment and I just—I'm

having a hard time seeing why a couple of weeks doesn't—you know, particularly since I am going to change the provision of [the] order that says that this is your only shot at it."  (Final Hr'g Tr. 141:1–8.)  The Final Order further reinforces the view that Judge Drain considered present and future security, not past security, because he determined that a two-week cash deposit was appropriate given "all of the relevant facts and circumstances and based on the Court's assessment of the degree of risk of nonpayment given the [Appellees'] cash flow from operations, cash on hand and proceeds from the DIP facility."  (Final Order ¶ 5.)  I accordingly do not find that Judge Drain committed reversible error by considering the absence of security before the date of the filing of the petition.

### D.    **Procedural Arguments**

#### i. **Bridge Order Extending the Section 366 Statutory Period**

Appellants also contend that the Bankruptcy Court erred by extending the 30-day statutory time period under Section 366.  (1512 Appellants' Br. 7–8; 1513 Appellant's Br. 8–10.)  Bankruptcy Rule 9006(b) limits a bankruptcy court's ability to extend statutory time periods in certain situations.  *See* Fed. R. Bankr. P. 9006(b).  But otherwise, except under certain enumerated sections of the Code, *see id.* 9006(b)(2), "the court for cause shown may at any time in its discretion" order that a time period be enlarged, *id.* 9006(b)(1).  Section 366 is not specified under Rule 9006(b)(2) as a section for which enlargement is not permitted.  *See id.* 9006(b)(2).  Accordingly, a court may enlarge the 30-day and 20-day protective time periods under Sections 366(c)(2) and 366(b),[19] respectively, if a party can show good cause.

In this case, Appellees filed an *Ex Parte* Motion for Entry of an *Ex Parte* Order Extending Section 366 of the Bankruptcy Code Pending the Debtors' Next Omnibus Hearing.

---

[19] Section 366(b) provides that a utility "may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief [entered by the bankruptcy court], furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date."  11 U.S.C. § 366(b).

(Bankr. Doc. 272.)  In the Motion, Appellees stated that preserving utility services on an
uninterrupted basis was essential to their ongoing operations and, in turn, their successful
reorganization.  (*Id.* ¶ 10.)  As such, and because the Final Hearing authorizing the relief sought
in the Utility Motion would be held more than 20 days after the bankruptcy was commenced,
Appellees requested that the Bankruptcy Court extend the Section 366(b) protective period.  (*Id.*
¶ 9.)  Appellees also noted that although the Utility Motion would be heard on the 29th day of
the 30-day-period under Section 366(c)(2), they sought such relief "out of an abundance of
caution."  (*Id.* ¶ 9 n.2.)  This Court finds that Appellees demonstrated good cause for
enlargement of the Section 366 statutory period under the facts of this case, especially
considering that the Final Hearing at such a late date might have made it impossible for
Appellees to comply with Section 366.  Accordingly, I find that the Bankruptcy Court did not err
in so holding, as it was moving the parties towards an order setting adequate assurances in the
case only days later.

## ii.  **Adversary Proceedings and Contested Matters**

Appellants next argue that the Bankruptcy Court's determination on adequate assurances
was, in effect, an injunction, because Appellants could not alter, refuse, or discontinue utility
service.  (*See* 1512 Appellants' Br. 9–11; 1513 Appellant's Br. 8–10.)  Because Appellants
believe an injunction was imposed, they argue that Appellees had to bring their Utility Motion by
way of an adversary proceeding under Federal Rule of Bankruptcy Procedure 7001(7).  (*See*
1512 Appellants' Br. 9–11; 1513 Appellant's Br. 8–10.)  In the alternative, Appellants claim that
even if not an injunction, a motion for relief under Section 366 is a "contested matter," and thus
is subject to the service requirements of Federal Rules of Bankruptcy Procedure 9014 and 7004.
(*See* 1512 Appellants' Br. 9–11; 1513 Appellant's Br. 8–10.)

### 1.   **Adversary Proceeding**

At the Final Hearing, the Bankruptcy Court heard arguments on whether Appellants were under an injunction.  Appellants' counsel stated that paragraphs 2 and 11 of the proposed Final Order "are clearly injunctions."  (Final Hr'g Tr. 158:23–24.; *see, e.g.*, Final Order ¶ 2 ("Absent compliance with the procedures set forth in the Motion and this Order, the Debtors' utility providers . . . are prohibited from altering, refusing or discontinuing service on account of any unpaid prepetition charges . . . .")).  Judge Drain disagreed and equated Section 366(c)(3)(A) to the automatic stay under 11 U.S.C. § 362, which is an automatic statutory injunction that generally halts actions by creditors to collect debts from a debtor who has declared bankruptcy. (*See* Final Hr'g Tr. 158:25–159:1–6.)  The court also cited to Collier's, which states that "[i]f a utility is found to have violated section 366, the consequences are similar to those which occur after a violation of section 362(a)."  3 *Collier on Bankruptcy* § 366.06; *see* Final Hr'g Tr. 159:2– 6.  Accordingly, it appears that Section 366 carries with it a statutory injunction, but not an injunction that requires the filing of an adversary proceeding.

Indeed, the cases to which Appellants cite are inapposite because although they state the black-letter law—that a party must file an adversary proceeding to obtain an injunction—they do so generally and outside the Section 366 context.  *See In re Goldberg*, 221 B.R. 907, 909 (Bankr. M.D. Fla. 1998); *In re Smith*, 142 B.R. 348, 349 (Bankr. W.D. Mo. 1992); *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting (In re Kham & Nate's Shoes No. 2, Inc.)*, 97 B.R. 420, 428 (Bankr. N.D. Ill. 1989); *In re Ennis*, 50 B.R. 119, 122 (Bankr. Nev. 1985); *In re Entz*, 44 B.R. 483, 485 (Bankr. Ariz. 1984).  To the extent that the cases Appellants cite relate to Section 366, they do so only in regard to debtors defaulting on utility bills post-petition, an issue not present in this case.  *See MFS Telecom, Inc. v. Motorola, Inc. (In re Conxus Commc'ns, Inc.)*, 262 B.R.

893, 899 (D. Del. 2001) (Bankruptcy Court erred in utilizing Section 105 of the Bankruptcy Code when it issued injunction precluding utilities from taking action under Section 366 after debtor defaulted post-petition); *In re Best Prods. Co.*, 203 B.R. 51, 54 (Bankr. E.D. Va. 1996) (court cannot enjoin a utility from pursuing state law rights in the event of a default under Section 366 without an injunction).  In sum, although Section 366 may impose a form of injunctive relief on Appellants, it does so only statutorily, which does not require the filing of an adversary proceeding under 7001(7).

## 2.    Contested Matter

Federal Rule of Bankruptcy Procedure 9014 governs a "contested matter," which is a term that the Rules do not define, but that the Advisory Committee's Note states is the litigation to resolve "an actual dispute, other than an adversary proceeding." Fed. R. Bankr. P. 9014 advisory committee's note.  Because, as stated above, this was not an adversary proceeding, it must have been a contested matter.

Appellants are correct that "before a federal court may exercise personal jurisdiction over a [party], the procedural requirement of service . . . must be satisfied.  These due process requirements apply in motion proceedings (i.e., contested proceedings) under Bankruptcy Rule 9014(b) . . . ." *Solow v. Kalikow (In re Kalikow)*, 602 F.3d 82, 92 (2d Cir. 2010) (first and second alterations in original) (internal citations omitted).  In a contested matter, the notice of hearing is treated like a summons and the motion is treated like a complaint, and Rule 9014 requires "reasonable notice" be given to accord with due process.  *Id.* at 92.  Debtors and creditors have the constitutional right to be heard on their claims, but only the *complete* denial of an opportunity to be heard is reversible.  *In re Bartle*, 560 F.3d 724, 730 (7th Cir. 2009); *cf. In re Taylor*, No. 97-CV-5967, 1997 WL 642559, at *2 (S.D.N.Y. Oct. 16, 1997) (harmless error

where one party gave notice on shorter time frame than Rules contemplated and other party still had opportunity to be heard).  Rule 9005 states that Federal Rule of Civil Procedure 61 applies to bankruptcy proceedings, and Rule 61, in turn, instructs courts to disregard any error that has not affected the substantial rights of a party.  *See* Fed. R. Bankr. P. 9005 (citing Fed. R. Civ. P. 61).

Here, Appellees failed to follow the service requirements of Bankruptcy Rule 7004, which required them to send a copy of the notice of hearing and motion by first class mail to the attention of an officer, managing or general agent, or any other agent authorized by appointment or by law of each of their utility providers.  *See* Fed. R. Bankr. P. 7004(b)(3).  This Court condones neither Appellees' failure to follow the Rule 7004 procedures that are firmly in place to safeguard the constitutional rights of parties in bankruptcy, nor their argument that they had too many utility providers for whom they had to obtain proper contact information in order to comply with 7004.  (*See* 1512 Appellees' Br. 21–22;[20] 1513 Appellees' Br. 22.)  Despite failing to receive proper notice under the Rules, however, Appellants, except for the 1513 Appellant that did not object below, availed themselves of the opportunity to be heard by way of their motions to the Bankruptcy Court objecting to Appellees' Utility Motion.  Appellants do not argue that they lacked actual notice or an opportunity to be heard, nor do they advance any other respect in which they were prejudiced by the method of service employed.  As such, the Bankruptcy Court's failure to require proper service of process in this case was harmless and did not affect Appellants' substantial rights.

---

[20] "1512 Appellees' Br." refers to Appellees' Brief filed in 11-CV-1512, (Doc. 7).

III.    **CONCLUSION**

For the foregoing reasons, the Final Order of the United States Bankruptcy Court, dated

January 12, 2011, is hereby AFFIRMED.  The Clerk of the Court is respectfully directed to

docket this decision in and close all four cases, (Case Nos. 11-CV-1338, 11-CV-1339, 11-CV-

1512, 11-CV-1513), and to terminate all pending motions in those cases.

**SO ORDERED.**

Dated: November _14_, 2011
       White Plains, New York

_____
          CATHY SEIBEL, U.S.D.J.

22